☆ U.S. GOVERNMENT PRINTING OFFICE: 1979 — 269 - 529



| REPORT OF INVESTIGATION *(Continuation)* | 1. FILE NO. GS-80-0010 | 2. G-DEP IDENTIFIER DA1-C2 |
|---|---|---|
| | 3. FILE TITLE SHOATEN, Henry Damon et al | |
| Page   3 of   3 | | |
| PROGRAM CODE | 6. DATE PREPARED December 19, 1979 | |

On December 4, 1979, VELEZ-Velez, ALZATE-Ramirez, GRAFMAN and SHOATEN were arrested at Lauderhill, Florida after an unsuccessful attempt at destruction of the evidence. Approximately 490.9 grams of cocaine was seized.

Southeast Regional Laboratory tests were positive for cocaine hydrochloride at 72% purity.



DATE:_____ THIS REPORT IS SUBMITTED TO
DEFENSE COUNSEL_____ PURSUANT TO
THE PROVISIONS OF TITLE 18 U.S.C. 3500 BY AUSA
_____ RECEIVED BY_____

1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

UNITED STATES OF AMERICA,                     )
                                              )
                        Plaintiff,            )
                                              )
vs.                                           )
                                              )        FGJ NO. 78-2 (FL)
CAESAR AUGUSTO VELEZ, JOHN DOE                )          INDICTMENT
a/k/a PABLO LOPEZ, MICHAEL                    )
GRAFFMAN and HENRY DAMON SHOATEN,             )
                                              )
                        Defendants,           )
                                              )
_____ )

Federal Courthouse
Fort Lauderdale, Florida

December 10, 1979

APPEARANCES:

        MR. BRUCE ZIMET,
        Assistant United States Attorney

                - - - - -

        MS. RUTH SLACK, Foreperson

                - - - - -

            TESTIMONY

                OF

        STEVEN GEORGES

            - - - - -

RECEIVED BY
U. S. ATTORNEY

JAN 2 1 1980

SO. DIST. OF FLORIDA
FT. LAUDERDALE

JACK BESONER AND ASSOCIATES
*Registered Professional Reporters*

102 WEST FLAGLER STREET
MIAMI, FLORIDA 33130

SUITE 316, LAS OLAS BUILDING
305 SOUTH ANDREWS AVENUE
FORT LAUDERDALE, FLORIDA 33301

1          (Whereupon the following

2          proceedings were had:)

3          MR. ZIMET:   The next proposed indictment

4    is a proposed four-count indictment involving four

5    individuals.

6          Count one states that:  On or about

7    December 3rd, 1979, and continuing until on or about

8    December 4th, 1979, at Broward County, in the Southern

9    District of Florida and elsewhere, the Defendants

10   Caesar Augusto Velez, John Doe also known as Pablo

11   Lopez, Michael Graffman and Henry Damon Shoaten, did

12   knowingly and wilfully combine, conspire, confederate

13   and agree and a tacit understanding with each other

14   and other persons unknown to the Grand Jury, to

15   commit certain offenses against the United States,

16   to-wit:  to violate Title 21 of the United States

17   Code, Section 841(a)(1).

18          It was the purpose and goal of such

19   conspiracy to knowingly and intentionally distribute

20   multi-pound quantities of a schedule to a controlled

21   substance, to-wit:  cocaine.

22          The Grand Jury further charges that the

23   said Defendants, in furtherance of said conspiracy

24   and for the purpose of effectuating the calls of

25   said conspiracy did, on or about the time and places

**JACK BESONER AND ASSOCIATES**
*Registered Professional Reporters*

102 WEST FLAGLER STREET
MIAMI, FLORIDA 33130

SUITE 316, LAS OLAS BUILDING
305 SOUTH ANDREWS AVENUE
FORT LAUDERDALE, FLORIDA 33301

3

1    hereinafter referred to, commit certain overt acts,

2    among which were the following:

3                    One:  On or about December 3rd, 1979,

4    the Defendant, Henry Shoaten discussed a cocaine

5    transaction with DEA Special Agent Steven Georges

6    at Broward County, Florida.

7                    Two:  On or about December 4, 1979, the

8    Defendant, Henry Shoaten, met with a DEA Special

9    Agent Steven Georges, in Fort Lauderdale, Florida,

10   and travelled  to a Denny's Restaurant, located at

11   Commercial Boulevard and Federal Highway, in Fort

12   Lauderdale, Florida.

13                   Three:  On or about December 4, 1979,

14   at the Denny's Restaurant in Fort Lauderdale, Florida,

15   the Defendant Graffman, met with Defendant Shoaten

16   and DEA Special Agent Steven Georges in order to

17   discuss a cocaine transaction.

18                   Four:  On or about December 4, 1979,

19   Defendant Michael Graffman and Henry Damon Shoaten

20   travelled from Denny's Restaurant in Fort Lauderdale,

21   Florida to the parking lot of a Jefferson's Depart-

22   ment store, located on Federal Highway in Fort

23   Lauderdale, Florida.

24                   Five:  On or about December 4, 1979,

25   the Defendant Graffman examined approximately $55,000

**JACK BESONER AND ASSOCIATES**
*Registered Professional Reporters*
102 WEST FLAGLER STREET
MIAMI, FLORIDA 33130
SUITE 316, LAS OLAS BUILDING
305 SOUTH ANDREWS AVENUE
FORT LAUDERDALE, FLORIDA 33301
4

1   of undercover government funds in the automobile in

2   the presence of DEA Special Agent Gene Bachman at

3   the Jefferson's Department Store parking lot, in

4   Fort Lauderdale, Florida.

5            Six:  On or about December 4, 1979,

6   Defendant Graffman and Defendant Shoaten travelled

7   to a shopping center parking lot at State Road 7 and

8   Commercial Boulevard in Fort Lauderdale, Florida.

9            Seven:  On or about December 4, 1979,

10  Defendant Graffman and Defendant Shoaten drove with

11  DEA Special Agent Steven Georges to a Lauderhill,

12  Florida residence for the purpose of meeting the

13  source of supply of the cocaine, as well as inspect-

14  ing the cocaine to be sold to DEA Special Agent

15  Steven Georges.

16           Eight:  On or about December 4, 1979,

17  Defendant Caesar Augusto Velez and John Doe, a/k/a

18  Pablo Lopez, arrived at the Lauderhill address,

19  where Graffman and Shoaten had awaited their

20  arrival.

21           Nine:  On or about December 4, 1979,

22  at the Lauderhill, Florida house, the Defendant

23  Velez entered the house and inquired as to whether

24  the money was at the house.

25           Ten:  On or about December 4, 1979,

**JACK BESONER AND ASSOCIATES**

*Registered Professional Reporters*

102 WEST FLAGLER STREET
MIAMI, FLORIDA 33130

SUITE 316, LAS OLAS BUILDING
305 SOUTH ANDREWS AVENUE
FORT LAUDERDALE, FLORIDA 33301

1   the Defendant John Doe, a/k/a Pablo Lopez, entered

2   the house in Lauderhill, Florida, carrying a blue

3   package and examined various rooms in the house.

4           Eleven:  On or about December 4, 1979,

5   at Lauderhill, Florida house, Defendant Velez invited

6   DEA Special Agent Steven Georges into a bathroom,

7   where a white powdery substance was exhibited to

8   Special Agent Georges in the presence of Defendants,

9   John Doe, a/k/a Pablo Lopez, Michael Graffman and

10   Henry Damon Shoaten and Caesar Augusto Velez.

11           All this in violation of Title 21 of

12   the United States Code, Section 846.

13           Count two alleges that on or about

14   December 4, 1979, at Broward County, the Southern

15   District of Florida, the Defendants Velez, John Doe,

16   a/k/a Pablo Lopez, Michael Graffman and Henry Damon

17   Shoaten did knowingly and intentionally possess,

18   with intent to distribute, a quantity of cocaine,

19   scheduled to a controlled substance, in violation of

20   Title 21, United States Code, Section 841(a)(1)

21   and Title 18, United States Code, Section 2.

22           Count three alleges that on or about

23   December 4, 1979, at Broward County, Southern District

24   of Florida, the Defendants, Caesar Augusto Velez,

25   John Doe, a/k/a Pablo Lopez--I believe I said Velez,

**JACK BESONER AND ASSOCIATES**
*Registered Professional Reporters*
102 WEST FLAGLER STREET
MIAMI, FLORIDA 33130
SUITE 316, LAS OLAS BUILDING
305 SOUTH ANDREWS AVENUE
FORT LAUDERDALE, FLORIDA 33301

6

1   John Doe, a/k/a Pablo Lopez, Michael Graffman and

2   Henry Damon Shoaten, did knowingly and intentionally

3   distribute a quantity of cocaine, scheduled to a

4   controlled substance, in violation of Title 21,

5   United States Code, Section 841(a)(1) and Title 18,

6   United States Code, Section 2.

7                  Count four:

8                  On or about December 4, 1979, at Lauder-

9   hill, Florida, Broward County, in the Southern

10  District of Florida, the Defendants, John Doe, a/k/a

11  Pablo Lopez, wilfully and knowingly and intentionally

12  resisted, opposed impeded and interferred with Gene

13  Bachman, a special agent with the Drug Enforcement

14  Administration, and individual authorized to conduct

15  searches and seizures, while Special Agent Bachman

16  was engaged in the performance of his duties, in

17  making a search and seizure, in violation of Title 21,

18  United States Code, Section 2231.

19                 Title 21, United States Code, Section

20  846, which is alleged in Count one reads in pertinent

21  part:

22                 Any person who attempts or conspires to

23  commit any offense defined in this Subchapter, is

24  punishable--

25                 Title 21, United States Code, Section

---

**JACK BESONER AND ASSOCIATES**

*Registered Professional Reporters*

102 WEST FLAGLER STREET
MIAMI, FLORIDA 33130

SUITE 316, LAS OLAS BUILDING
305 SOUTH ANDREWS AVENUE
FORT LAUDERDALE, FLORIDA 33301

1    841(a)(1) states, in pertinent part:

2            Except as authorized by this Subchapter,

3    it shall be unlawful for any person knowingly or

4    intentionally to manufacture, distribute or dispense

5    or possess with intent to manufacture, distribute or

6    dispense a controlled substance.

7            Title 18, United States Code, Section

8    2, which is contained in Count two and three of the

9    proposed indictment and has been described to you

10   previously, is the aiding and abetting statute,

11   which read in pertinent part:

12           Whoever commits an offense against the

13   United States, aids, abets, counsels, commands,

14   induces or procures its commission, is punishable

15   as a principal.

16           Whoever wilfully causes an act to be

17   done, which, if directly performed by him or another,

18   would be an offense against the United States, is

19   punishable as a principal.

20           Title 18, United States Code, Section

21   2231, which is contained in the last count of the

22   indictment, read, in pertinent part, as follows:

23           Whoever forceably assaults, resists,

24   opposes, prevents, impedes, intimidates, interferes

25   with any person authorized to serve or execute search

9

1    warrants or to make searches or seizures, while

2    engaged in the performance of his duties, shall be

3    punished.

4              Okay.    That's Count four in the indict-

5    ment concerning John Doe, a/k/a Pablo Lopez.

6              We will hear testimony of Special

7    Agent Georges, who is a special agent of the Drug

8    Enforcement Administration.

9              Some of his testimony might be hearsay,

10   events which he has not observed with his first-hand

11   knowledge.

12             But if the Grand Jury wants non-hearsay

13   evidence, it is their prerogative to ask for that

14   type of evidence.

15             Additionally, if the Grand Jury wants

16   additional testimony, it is their prerogative to

17   ask for additional testimony.

18             Also, I instruct the Grand Jury that

19   the Grand Jury should consider the evidence in deter-

20   mining probably cause, as to each of the Defendants

21   individually, as to each of the Counts proposed in

22   the indictment individually.

23             May we swear in the witness?

24             THE FOREPERSON:  You do solemnly swear

25   that the testimony you give will be the truth, the

**JACK BESONER AND ASSOCIATES**
*Registered Professional Reporters*
102 WEST FLAGLER STREET                                    SUITE 316, LAS OLAS BUILDING
MIAMI, FLORIDA 33130                                       305 SOUTH ANDREWS AVENUE
                                                           FORT LAUDERDALE, FLORIDA 33301

39

10

1   whole truth, and nothing but the truth, so help you

2   God?

3                    THE WITNESS:  I do.

4   THEREUPON:

5                    STEVEN GEORGES

6   was called as a witness and, having been first duly

7   sworn by the Foreperson, was examined and testified

8   as follows:

9                    EXAMINATION

10  BY MR. ZIMET:

11          Q.    State your full name for the Record,

12  please.

13          A.    Steven Georges.

14          Q.    And you are employed by whom?

15          A.    Drug Enforcement Administration,

16  Special Agent with the Department of Justice.

17          Q.    On or about December 3rd, 1979, were you

18  so employed?

19          A.    Yes, I was.

20          Q.    On that particular day, did you have any

21  conversation with an individual by the name of Henry

22  Damon Shoaten, concerning a proposed cocaine trans-

23  action?

24          A.    Yes, I did.

25          Q.    Were those preliminary discussion leading

**JACK BESONER AND ASSOCIATES**
*Registered Professional Reporters*

102 WEST FLAGLER STREET          SUITE 316, LAS OLAS BUILDING
MIAMI, FLORIDA 33130             305 SOUTH ANDREWS AVENUE
                                 FORT LAUDERDALE, FLORIDA 33301

40

1    up to the events on or about December 4, 1979?

2         A.    Yes.

3         Q.    Were you to meet with Mr. Shoaten

4    concerning the proposed cocaine transaction?

5         A.    Yes, later on that evening.

6         Q.    Did you in fact meet with Mr. Shoaten

7    on or about December 4, 1979?

8         A.    Yes, I did.

9         Q.    Did you first meet with him at a Tenneco

10   Gas Station on 4th Avenue in Fort Lauderdale?

11        A.    Yes, I did.

12        Q.    That took place on or about December 4,

13   1979?

14        A.    That's correct.

15        Q.    From that particular location, did you

16   travel to a Denny's Restaurant located at Commercial

17   Boulevard and Federal Highway in Fort Lauderdale,

18   Florida?

19        A.    Yes, I did.

20        Q.    What was your purpose in going to that

21   location?

22        A.    Confidential informant and myself were

23   to meet the source of supply for the cocaine, at

24   that location.

25        Q.    And, at that location, being the Denny's

**JACK BESONER AND ASSOCIATES**
*Registered Professional Reporters*

102 WEST FLAGLER STREET                    SUITE 316, LAS OLAS BUILDING
MIAMI, FLORIDA 33130                       305 SOUTH ANDREWS AVENUE
                                           FORT LAUDERDALE, FLORIDA 33301

12

1   Restaurant in Fort Lauderdale, did you come in contact

2   with an individual by the name of Michael Graffman?

3       A.      Yes, I did.

4       Q.      Did he meet with yourself and Mr. Shoaten

5   for the purpose of discussing cocaine transactions?

6       A.      Yes, he did.

7       Q.      What, essentially was discussed at the

8   Denny's Restaurant?

9       A.      Mr. Graffman stated to me that the

10  people that he was working with wanted to see the

11  money, that he would not be able to deliver the

12  cocaine until he saw the money.

13          At this time, I told him that the money

14  for the transaction was at a parking lot on North

15  Federal Highway, at the Jefferson's Department Store,

16  and that he could count the money there and we would

17  further negotiate to have the cocaine delivered in

18  the parking lot.

19          Mr. Graffman stated that would be unac-

20  ceptable, as people he was representing would not

21  deliver the cocaine in the parking lot.

22          They specifically owned a house on

23  Commercial Boulevard, and Route 441 in Lauderhill,

24  specifically for the purpose of transacting cocaine

25  at that house.

**JACK BESONER AND ASSOCIATES**
*Registered Professional Reporters*

102 WEST FLAGLER STREET
MIAMI, FLORIDA 33130

SUITE 316, LAS OLAS BUILDING
305 SOUTH ANDREWS AVENUE
FORT LAUDERDALE, FLORIDA 33301

1          A.     Yes, they did.

2          Q.     Approximately  how long was that after

3    you had or after Mr. Graffman had viewed the money?

4          A.     As soon as he saw the money, we discussed

5    the transaction for several minutes, and immediately

6    went to that location.

7          Q.     Let me just back up one second, to the

8    initial meeting at the Denny's Restaurant.

9          Did Mr. Shoaten introduce Mr. Graffman

10   to you?

11         A.     Yes.

12         He introduced him as Michael.

13         Q.     When you arrived at that location, the

14   shopping center on State Road 7 and Commercial

15   Boulevard in Fort Lauderdale, did Mr. Graffman, Mr.

16   Shoaten and yourself drive to Lauderhill, Florida,

17   a residence in Lauderhill, Florida, for the purpose

18   of meeting the source of the supply of the cocaine,

19   as well as to view the cocaine itself?

20         A.     That's correct.

21         Q.     Do you recall approximately where that

22   house was located?

23         A.     7341 N. W. 43rd Court, Lauderhill.

24         Q.     Was there anybody inside the house when

25   you arrived at that location?

JACK BESONER AND ASSOCIATES
Registered Professional Reporters
102 WEST FLAGLER STREET
MIAMI, FLORIDA 33130
SUITE 316, LAS OLAS BUILDING
305 SOUTH ANDREWS AVENUE
FORT LAUDERDALE, FLORIDA 33301
13

1        A.      No, there was not.

2        Q.      And, can you describe, generally, what

3   the inside of that house appeared to look like when

4   you arrived?

5        A.      There was very relatively few furniture

6   in that house, a few couches, a bed, all the cabinets

7   in the kitchen were empty.  There were no sheets on

8   the beds, generally it was unliveable at that time.

9        Q.      Did you examine the rooms of that house

10  when you arrived?

11       A.      Yes, I did.

12       Q.      What was your purpose in doing that?

13       A.      At that time I had been in the company

14  of three people I didn't know whether they were armed

15  or--and I checked the other rooms to see if there was

16  anybody else present in the house.

17       Q.      That resulted with negative results?

18       A.      Right.

19               There was no one else present.

20       Q.      Did Mr. Graffman indicate to you, up to

21  that point, who his contacts were, who the cocaine

22  was coming from?

23       A.      Once we arrived at the residence, Mr.

24  Graffman said to me, the cocaine would be coming from

25  an individual named Caesar, who he referred to as

1    Little Caesar.

2              He stated that Caesar was a young

3    Colombian, and that he had a very good cocaine

4    connection in South America.

5         Q.    Did he describe another individual who

6    would be coming with Caesar, Little Caesar?

7         A.    Not at that time.

8              At a later time.

9         Q.    Did there come a time in which two

10   individuals arrived at the Lauderhill, Florida house?

11        A.    Yes.

12        Q.    And, did you later learn those people

13   were Caesar Augusto Velez and also John Doe, a/k/a

14   Pablo Lopez?

15        A.    That's correct.

16        Q.    Was this individual Lopez, carrying

17   anything when he arrived?

18        A.    Yes, a blue nylon bag, shuts as a travel

19   bag, when he walked in.

20        Q.    What, if anything, did Mr. Lopez do

21   when he arrived at the house?

22        A.    He walked in with the bag, holding it

23   very tightly under his right arm.

24              Immediately he went to all the rooms in

25   the house, to check to see if there was anybody else

JACK BESONER AND ASSOCIATES
*Registered Professional Reporters*

102 WEST FLAGLER STREET
MIAMI, FLORIDA 33130

SUITE 316, LAS OLAS BUILDING
305 SOUTH ANDREWS AVENUE
FORT LAUDERDALE, FLORIDA 33301

17

1    present, other than myself, Mr. Graffman and Shoaten.

2               At this time he checked the rooms and

3    then came back into the living room and went imme-

4    diately to the kitchen and placed the bag on the table.

DE 2

5         Q.    Mr. Caesar Velez also entered the house?

6         A.    Yes, he did, approximately the same time

7    or shortly thereafter.

8         Q.    Did he ask or inquire of anyone after

9    he entered the house?

10        A.    He stated to Graffman, he wanted to

11   inquire where the money was at, at which time Mr.

12   Graffman stated that the money, the man with the money

13   had been at the house and we had waited approximately

14   a half hour, and he left to a location several minutes

15   away, where I would call him once I had seen the cocaine.

16        Q.    Did there come a time in which Velez

17   entered the bathroom in the house?

18        A.    Yes, he did.

19        Q.    And subsequent to his entering a bath-

20   room, did anybody else enter a bathroom in the house?

21        A.    Shortly thereafter, Mr. Shoaten and

22   Mr. Graffman also entered the bathroom.

23        Q.    Was there anyone or any communication

24   with you, after their entry into the bathroom?

25        A.    Once the three individuals were in the

**JACK BESONER AND ASSOCIATES**
*Registered Professional Reporters*
102 WEST FLAGLER STREET
MIAMI, FLORIDA 33130
SUITE 316, LAS OLAS BUILDING
305 SOUTH ANDREWS AVENUE
FORT LAUDERDALE, FLORIDA 33301
46

1    bathroom, Mr. Graffman and Mr. Shoaten called me into

2    the bathroom and wanted me to view the package they

3    had laid out on the counter.

4         Q.    Did Mr. Velez communicate with you in

5    any way, prior to your going into the bathroom?

6         A.    When I stepped to the entrance, Mr. Velez

7    motioned to me, with his hand, to come into the bath-

8    room.

9         Q.    You lifted your finger of your right hand

10   and pointed your index finger towards yourself.

11        Is that the type of motion he  made

12   towards you?

13        A.    That's correct.

14        Q.    And once inside the bathroom, what, if

15   anything, did you observe?

16        A.    I observed a plastic package, with a

17   white powdery substance laid out on the counter.

18        The package was opened and, it was

19   placed, several feet away from the toilet.

20        I noticed that the seat had been lifted

21   up and recently flushed.

22        Q.    Who was in the bathroom at that point?

23        A.    Mr. Velez, Mr. Graffman, Mr. Shoaten

24   and myself.

25        I was standing at the entrance to the

JACK BESONER AND ASSOCIATES
Registered Professional Reporters
102 WEST FLAGLER STREET
MIAMI, FLORIDA 33130
SUITE 316, LAS OLAS BUILDING
305 SOUTH ANDREWS AVENUE
FORT LAUDERDALE, FLORIDA 33301

bathroom.

2        How about Mr. Lopez?

3        A.      As soon as I went through the entrance

4   to the bathroom, Mr. Lopez appears behind me, in my

5   opinion, blocking my way out of the bathroom.

6        Q.      What was between yourself and the door

7   or the exit of the bathroom and/or the exit of the

8   house?

9        A.      Mr. Lopez was standing there.

10       Q.      Subsequent or after you saw the white

11   powdery substance, what, if anything, did you do?

12       A.      At that point, I took some of the white

13   powdery substance between my fingers, and Mr. Shoaten

14   and Mr. Graffman indicated that they wanted me to

15   snort some of their cocaine, to test it, at that

16   point, and I stated that you would test it after I

17   had seen it, after I had gotten the money.

18       I kept some of the white powdery sub-

19   stance in my hands, because I knew Mr. Graffman and

20   myself would be leaving in his car, to get the money,

21   at which time, when I got in the car, I field tested

22   it with positive results for cocaine.

23       Q.      On the way back to the shopping center,

24   did Graffman discuss anything concerning Velez and

25   Lopez?

JACK BESONER AND ASSOCIATES
Registered Professional Reporters
102 WEST FLAGLER STREET
MIAMI, FLORIDA 33130
SUITE 316, LAS OLAS BUILDING
305 SOUTH ANDREWS AVENUE
FORT LAUDERDALE, FLORIDA 33301

25

## CERTIFICATE

     I, GEORGE A. HAAS, a Certified Shorthand Reporter, do hereby certify that STEVEN GEORGES appeared before the Federal Grand Jury, Miami, Florida, on the 10th day of December, 1979, that I was authorized to and did report in shorthand the testimony of said witness and that the foregoing pages, numbered from 1 to and including 24, constitute a true and correct record thereof.

     IN WITNESS WHEREOF I have hereunto affixed my hand on this 15 day of January, 1980.

**JACK BESONER AND ASSOCIATES**
*Registered Professional Reporters*

102 WEST FLAGLER STREET
MIAMI, FLORIDA 33130

SUITE 316, LAS OLAS BUILDING
305 SOUTH ANDREWS AVENUE
FORT LAUDERDALE, FLORIDA 33301

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FT. LAUDERDALE, DIVISION

UNITED STATES OF AMERICA, )
                        )
        Plaintiff, )
                        )
                        )
      vs.           )      FGJ NO. 80-1 (FT. LAUD.)
                        )         INDICTMENT
                        )
JOHN DOE, a/k/a "PABLO )
LOPEZ", a/k/a "JOHN JAIRO )
ALZATE", )
                        )
        Defendant. )
_____ )

Federal Courthouse
Ft. Lauderdale, Florida

July 21, 1980

APPEARANCES:

        BRUCE ZIMET
        Assistant United States Attorney
        Ft. Lauderdale, Florida

           - - - -

        SEBASTIAN GARCIA, Deputy Foreperson

           - - - -

           TESTIMONY

             OF

          STEVEN GEORGES

RECEIVED
Aug 22 10 23 AM '80
UNITED STATES
ATTORNEY
FORT LAUDERDALE,
FLORIDA

2

1              Proceedings had and testimony taken

2    before the Federal Grand Jury, Ft. Lauderdale

3    Division, at the Federal Courthouse, Ft. Lauderdale

4    Florida, on the 21st day of July, 1980.

5

6

7

8

9                        - - - - -

10

11

12

13   Reported by:   REX A. LEAR

14                   Official Court Reporter

15

16                        - - - - -

17

18

19                      I N D E X

20

21

22       Witness                        Examination

23       STEPHEN GEORGES                      3

24

25                        - - - - -

51

```
 1                    THE DEPUTY FOREPERSON:  You do

 2     solemnly swear that the testimony you give will be

 3     the truth, the whole truth and nothing but the truth,

 4     so help you God.

 5                    THE WITNESS:  Yes, I do.

 6     THEREUPON:

 7                    STEPHEN GEORGES

 8     was called as a witness, and having been first duly

 9     sworn by the Foreperson, was examined and testified

10     as follows:

11                    EXAMINATION

12     BY MR. ZIMET:

13          Q.    State your full name, sir?

14          A.    Stephen Georges.

15          Q.    You are employed by whom?

16          A.    I am employed by the Drug Enforcement

17     Administration.

18          Q.    Are you aware of the facts and

19     circumstances underlying the proposed indictment

20     concerning John Doe, also known as Pablo Lopez also

21     known as John Jairo Alzate?

22          A.    Yes, I am.

23          Q.    Are you aware whether or not on or

24     about June 16, 1980, Mr. Alzate was scheduled for

25     trial in front of the Honorable Norman C. Roetger,
```

1    United States Federal District Judge, in Ft.

2    Lauderdale?

3              A.    Yes, he was.

4              Q.    Was that trial to be pursuant to

5    indictment number 79-6086, which had been filed

6    December 10, 1979?

7              A.    Yes, it was.

8              Q.    Had Mr. Alzate been charged with the

9    following offenses, possession with intent to

10   distribute, distribution, conspiracy to distribute

11   cocaine, as well as interfering with a law

12   enforcement agent conducting a search?

13             A.    Yes, he was.

14             Q.    Were these, respectively, in violation

15   of Title 21, United States Code, Sections 841 A 1,

16   846 and Title 18 United States Code Section 2231?

17             A.    Yes, they were.

18             Q.    All those offenses were felonies?

19             A.    Yes, they were.

20             Q.    Was Mr. Alzate, pursuant to these

21   charges, released under Title 18, United States Code,

22   Section 3146, on a personal recognizance bond in the

23   amount of a $150,000?

24             A.    Yes, he was.

25             Q.    Was that bond to insure his appearance

53

1   in the United States District Court for the Southern

2   District of Florida?

3          A.   Yes, it was.

4          Q.   Did Mr. Alzate show up for that trial

5   on or about June 15?

6          A.   No, sir, he did not.

7          Q.   Was that the date that the trial,

8   along with his co-defendant, was to have taken place?

9          A.   Yes, it was.

10         Q.   Mr. Alzate's attorney was present in

11   court when this trial was to commence?

12         A.   Yes.

13         Q.   Did he inform the Court, as he

14   informed the Court on previous occasions, that he

15   had attempted to contact his client and had been

16   unsuccessful in contacting his client?

17         A.   Yes, he did.

18         Q.   Did he inform the Court Mr. Alzate,

19   from the time he was released from custody, he had

20   been unable to come in contact with him and had

21   heard nothing from his client?

22         A.   Yes, he did.

23         Q.   Did that trial commence until Friday,

24   June 20, 1980, in front of Judge Roetger?

25         A.   Yes, it did.

1          Q.     During the period of time trial was in

2     session did Mr. Alzate appear?

3          A.     No.

4          Q.     Are you aware whether he has made any

5     notification to the court, since that time?

6          A.     No, I know of no such circumstances.

7                 MR. ZIMET:   Questions.

8                 Thank you.

9

10                     (WITNESS EXCUSED)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

55

CERTIFICATE OF REPORTER

1
2
3        I, REX A. LEAR, Official Court
4  Reporter, do hereby certify that STEPHEN GEORGES
5  appeared before the Federal Grand Jury, Ft.
6  Lauderdale Florida, on the 21st day of July 1980;
7  that I was authorized to and did report the sworn
8  testimony of said witness, that the foregoing pages,
9  numbered from 1 to and including 6 constitute a true
10  and correct transcription thereof.
11        IN WITNESS WHEREOF I have hereunto
12  affixed my hand this 31st day of July 1980.
13
14
15
16
17
18
19
20
21
22
23
24
25

56



UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE, FLORIDA

UNITED STATES OF AMERICA,          )
                                   )
                    Plaintiff,     )
                                   )
        vs.                        )     No. 79-6086-Cr-NCR
                                   )
CEASAR VELEZ,                      )
                                   )
                    Defendant.     )
--------------------------------)

                                    United States Courthouse,
                                    299 East Broward Boulevard,
                                    Fort Lauderdale, Florida,
                                    April 30, 1980.


     The above-entitled cause came on for bond hearing before

The Honorable Patricia Jean Kyle, United States Magistrate,

pursuant to notice.

                         - - -

     APPEARANCES:

          ATLEE W. WAMPLER, III, United States Attorney,
          by WILLIAM NORRIS, Assistant United States
          Attorney,
          appearing on behalf of the Plaintiff.

          PETER AIKEN, ESQ.,
          appearing on behalf of the Defendant.

     ALSO PRESENT:

          Norman O'Rourke, Esq.,
          appearing on behalf of Brandy Bail Bonds.

LAWYER'S NOTES

| Page | Line | |
|------|------|---|
| | | |

2

1    The following is a transcript prepared from the

2  recorded tape of this hearing.

3                    ----------------

4  Thereupon:

5      The following proceedings were had:

6          THE CLERK:  Calling Case Number 79-6086-Cr-NCR,

7  United States of America versus Ceasar Velez.

8          MR. AIKEN:  Peter Aiken on behalf of Ceasar Velez

9  (inaudible).  Mr. Velez is before the Court, Your Honor.

10          MR. O'ROURKE:  Norman O'Rourke from Fort Lauderdale,

11  Your Honor, appearing on behalf of Brandy Bail Bonds and

12  Wayne Spath is here on behalf of Brandy Bail Bonds.

13          THE COURT:  All right.

14          MR. AIKEN:  Your Honor, basically what we're asking

15  is to review the bond in this particular matter on behalf

16  of Mr. Velez.  I would ask for a reduction of bond.

17      The situation is this; as you may recall, Mr. Velez

18  was in jail for quite a number of days before he was

19  successful in getting his bond reduced and getting him

20  out.  One of the things that his sister did to facilitate

21  that was to put up as collateral with the bonding company

22  a CD that she had on deposit.  That CD expires or matures

23  tomorrow and the sister advised that she desperately

24  needs the money to get involved in some real estate

25  transactions.

1    I'm not asking for total reduction of bond, but I

2    would ask the Court to consider changing a portion of

3    the surety bond to personal recognizance bond.

4        The matter has been pending now for about five-and

5    a-half months and the Defendant has always faithfully

6    appeared and even on oral notice from our office, did

7    appear today.

8        The bondsman is secured, absent that security -

9    or absent the CD, the bondsman is secured for between

10   30 and $35,000.

11       So, what I will ask the Court to do is to consider

12   a reduction in the surety bond, reduce the surety bond

13   to $30,000.  I think it is presently a $60,000 surety

14   bond, and convert 30 of that 60 to personal recognizance.

15       I will call the Court's attention - I think the Co-

16   Defendant, Pablo Lopez, is even out on personal surety

17   himself.  I may be incorrect.  I think he was incarcerated

18   for the requisite number of days and subsequently --

19       THE COURT:  That's why he's out.

20       MR. AIKEN:  He was subsequently released because

21   he, in fact, had been incarcerated.

22       The situation should really be not that much greater

23   as to this Defendant.  This Defendant, if the Court sees

24   fit to reduce it, the Court would still be secured to

25   the tune of $30,000 surety and, then, a personal surety